**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GAYLE M. WASHINGTON, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No.  SA-11-CV-763-XR |
| | § | |
| JP MORGAN CHASE, | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

On this day the Court considered Defendant's motion to dismiss Plaintiff's amended complaint (Doc. No. 19) and Plaintiff's motion for leave to file a second amended complaint (Doc. No. 34). For the following reasons, the Court GRANTS Defendant's motion to dismiss and DENIES Plaintiff's motion for leave to file a second amended complaint.

**I.**

**A. Factual Background**

On August 15, 2000, Plaintiff Gayle M. Washington ("Plaintiff") purchased property located at 15218 Pebble Forest, San Antonio, Texas by taking out a mortgage loan from Long Beach Mortgage Company in the amount of $133,025.[1] Plaintiff executed a deed of trust that was filed for record.[2] Plaintiff was subsequently informed that she was to begin making payments to Washington Mutual and, shortly thereafter, was instructed that she was to make payments to Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "JPMC").[3] Defendant

---

[1] Am. Compl. ¶ 3.
[2] Am. Compl. ¶ 3.
[3] Defendant was incorrectly sued as "JP Morgan Chase NA." *See* Mot. Dismiss 1.

was acting as the mortgage servicer for the mortgagee Deutsche Bank National Trust Company ("Deutsche Bank").[4]

Plaintiff alleges that at some point she "began having problems with her mortgage related to Defendant not giving proper credit for previous payments made and charging fees not agreed to in the original documents."[5] Defendant accelerated the debt and scheduled foreclosure on the property.

Plaintiff alleges that Defendant is not authorized to foreclose because Defendant cannot prove that it is the valid owner or holder of the note, because the assignment document purporting to transfer the note and deed of trust is fake and void, and because assignment of the note failed to comply with a pooling and servicing agreement.

## B. Procedural Background

Plaintiff filed her Original Verified Petition and Application for Temporary Restraining Order and Temporary Injunction in the 224th Judicial District Court of Bexar County, Texas on September 6, 2011. Plaintiff alleged causes of action for declaratory judgment, "fraudulent claim" pursuant to Chapter 12 of the Texas Civil Practice and Remedies Code, common law fraud, fraud in a real estate transaction, negligence, negligent misrepresentation, breach of contract, agency, respondeat superior, and intentional infliction of emotional distress. Plaintiff also sought exemplary damages, attorneys' fees, and injunctive relief. When she filed her original petition, Plaintiff also filed copies of an assignment document, a notice of acceleration and trustee sale, and a notice of scheduled foreclosure.

---

[4] *See* Prop. Second Am. Compl. ¶ 6. Deutsche Bank was acting as trustee for "Asset Back Securities Corporation Long Beach Home Equity Loan Trust 2000-LB1." *See* Prop. Second Am. Compl. ¶ 6; *see also* Doc. No. 33-2.
[5] Am. Compl. ¶ 7.

Defendant removed the action to this Court on September 15, 2011, based on diversity jurisdiction. Shortly after removal, Defendant filed a motion to dismiss or, alternatively, motion for more definite statement.[6] The Court converted the motion to a motion for summary judgment and ordered the parties to come forward with evidence in support of or in opposition to summary judgment.[7] Plaintiff filed a response to the motion for summary judgment and attached the deed of trust, an assignment document, two notices of acceleration, a warranty deed, an affidavit of Ezequiel Martinez, and an affidavit of Kenneth Grubbs.[8] In support of the motion for summary judgment, Defendant produced a declaration of Michael E. Koon, the deed of trust, the assignment document, a certificate from the Comptroller of the Currency, an order from the Office of Thrift Supervision, an affidavit from William Lynch, and several copies of court documents from two bankruptcy proceedings in which Ms. Washington had filed for relief under Chapter 13.[9] The Court granted Plaintiff leave to file an amended complaint on March 28, 2012 and, as a result, the Court subsequently mooted Defendant's motion for summary judgment.[10] The amended complaint (Doc. No. 17) is the live pleading in this case.

In her amended complaint, Plaintiff alleges causes of action for declaratory judgment, violations of the Uniform Commercial Code ("UCC"), violations of the Texas Debt Collection Act and Texas Deceptive Trade Practices Act, and common law fraud. Plaintiff also seeks statutory damages, exemplary damages, mental anguish damages, attorneys' fees, and injunctive relief.

---

[6] Doc. No. 3.
[7] Doc. No. 8.
[8] Doc. No. 15.
[9] Doc. No. 18.
[10] *See* Text Order entered on March 28, 2012; Text Order entered on July 3, 2012.

Shortly after the amended complaint was filed, Defendant filed a motion to dismiss the amended complaint.[11] Defendant argues that Plaintiff's amended complaint fails to state a plausible claim for relief because it is premised on prerequisites to foreclosure that are not required under Texas law, because Plaintiff does not have standing to challenge the assignment of the note and deed of trust, and because Plaintiff does not have standing to challenge compliance with the pooling and servicing agreement. Plaintiff filed a response to Defendant's motion to dismiss, attaching copies of the deed of trust and the assignment document,[12] and Defendant filed a reply.[13]

In addition to filing a response to Defendant's motion to dismiss the amended complaint, Plaintiff also filed a motion for leave to file a second amended complaint.[14] Plaintiff provides the following reasons for seeking leave to amend:

> A) Deutsche [Bank National Trust Company] is actually the purported holder in this case and is a necessary party to resolve the [dispute].
>
> B) Chase is apparently simply the servicer in the matter[.]
>
> C) No discovery has been conducted in this case due to the prior and now lifted stay.
>
> E) [sic] Plaintiff no longer wishes to pursue her claims for DTPA, DCPA and Fraud and wishes to ad[d] claims for Chapter 12 Texas Civil Practices [sic] and Remedies Code violations, Quiet title and Breach of Contract Claims[.][15]

In her proposed second amended complaint, Plaintiff asserts causes of action for declaratory judgment, violation of the UCC, quiet title, violation of Chapter 12 of the Civil Practice and Remedies Code, and breach of contract. Plaintiff seeks injunctive relief and attorneys' fees,

---

[11] Doc. No. 19.
[12] Doc. No. 33.
[13] Doc. No. 36.
[14] Doc. No. 34.
[15] Mot. Leave ¶ 2.

and in connection with her Chapter 12 claim seeks an award of $10,000 and mental anguish damages.

Defendant opposes Plaintiff's motion for leave to file a second amended complaint, arguing that Plaintiff did not comply with the Court's scheduling order, that Plaintiff has not shown good cause to amend, that amendment would cause undue delay and would prejudice Defendant, and that Plaintiff did not confer with Defendant prior to filing her motion.[16]

## II.

### A. Legal Standard for Deciding a Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While detailed factual allegations are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. However, a complaint can survive a motion to dismiss even if actual proof of the facts alleged is "improbable." *Id.* at 556. Although the court must take all of the factual allegations in the complaint as true, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

---

[16] Doc. No. 35.

**B. Documents That May Be Considered**

The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The court may also consider any documents attached to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (holding that while the court generally must not go outside the pleadings, "the court may consider documents attached to a motion to dismiss that 'are referred to in the plaintiff's complaint and are central to the plaintiff's claim.'")). In attaching documents to a motion to dismiss that are referred to in the plaintiff's complaint and are central to her claim, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000). Whether the plaintiff has objected to the court's consideration of documents external to the complaint may be a factor that can be taken into account in determining whether to consider the documents. *Scanlan*, 343 F.3d at 536 (citing *Collins*, 224 F.3d at 498-99) ("The fact that the plaintiffs did not object to, or appeal, the district court's consideration of [documents attached to a motion to dismiss] was central to [the Fifth Circuit's] approval of that practice."). The district court may also take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *see also Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly

6

proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

Although many documents have been filed with the Court over the course of this litigation, the Court will limit its consideration at this time to the deed of trust and the assignment document. Both documents are central to Plaintiff's claims and are repeatedly referenced throughout both the amended complaint and the proposed second amended complaint. Both the deed of trust and the assignment document have also been recorded and are therefore matters of public record.

### III.

### A. Cause of Action to Quiet Title[17]

### 1. Legal Standard for Establishing a Claim to Quiet Title

"The principal issue in a suit to quiet title is as to the existence of a cloud that equity will remove." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied) (quoting *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Angell v. Bailey*, 225 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.). "Any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston

---

[17] Although Plaintiff does not explicitly assert a cause of action to quiet title in her amended complaint, she does explicitly assert a cause of action to quiet title in her proposed second amended complaint. When considering Plaintiff's case as a whole, it is obvious that Plaintiff is attempting to quiet title to her property: the essence of her lawsuit is that Defendant cannot prove that it has the legal right to foreclose, and all of her argument is directed towards impugning Defendant's authority to do so. The Court will therefore consider Plaintiff's claim to quiet title as alleged in her proposed second amended complaint. To ensure that the Court considers Plaintiff's best case, the Court will take into account factual allegations contained in both the amended complaint and the proposed second amended complaint.

[1st Dist.] 2009, pet. denied) (quoting *Johnson v. Williams*, No. 01-05-00445-CV, 2006 WL 1653656, at *4 (Tex. App.—Houston [1st Dist.] June 15, 2006, pet. denied) (mem. op.)).

"The effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title." *Gordon v. W. Houston Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App.—Houston [1st Dist.] 2011, no pet.). "In other words, the purpose of a suit to quiet title is to invalidate the defendant's claim to title." *Ellis v. Buentello*, No. 01-12-00098-CV, 2012 WL 3528009, at *3 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.) (mem. op.). Nonetheless, the plaintiff still "has the burden of supplying the proof necessary to establish his superior equity and right to relief." *Hahn*, 321 S.W.3d at 531.

To prevail on a claim to quiet title, a plaintiff must establish that the defendant: (1) created a hindrance to the plaintiff's title, having the appearance of a better right to title than his own, that (2) appears to be valid on its face, and that (3) for reasons not apparent on its face, is not valid. *Ellis*, 2012 WL 3528009, at * 3 (citing *Gordon*, 352 S.W.3d at 42).

Here, Plaintiff alleges that she purchased property and executed a deed of trust, thereby retaining legal title to the property.[18] Defendant claims a right to foreclose on the property, and this alleged right to foreclose constitutes a "cloud" because it affects Plaintiff's legal title.[19] Plaintiff's case is based on the allegation that Defendant's claimed right to foreclose is invalid. Thus, Plaintiff's allegations have satisfied the elements of a claim to quiet title.

---

[18] "When a mortgagor executes a deed of trust the legal and equitable estates in the property are severed. The mortgagor retains the legal title and the mortgagee holds the equitable title. Texas has always followed this lien theory of mortgages." *Green v. McKay*, 376 S.W.3d 891, 899 n.9 (Tex. App.—Dallas 2012, pet. denied) (quoting *Flag–Redfern Oil v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987)).

[19] *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 603 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (stating that "[f]oreclosure transfers title from the debtor to another party").

Nonetheless, Defendant argues that Plaintiff's claim to quiet title fails to state a plausible claim for relief because Plaintiff's allegations regarding the invalidity of Defendant's right to foreclose are premised on arguments that fail as a matter of law.

**2. Does Defendant Have Authority to Foreclose Based on the Faces of the Documents Central to Plaintiff's Claims?**

   **a. Legal Standard for Establishing Authority to Foreclose Under Texas Law**

Section 51.002 of the Texas Property Code governs the procedure for conducting a non-judicial foreclosure sale and authorizes a mortgagee, or a mortgage servicer acting on behalf of a mortgagee, to sell real property "under a power of sale conferred by a deed of trust." TEX. PROP. CODE §§ 51.002; 51.0025; *see also* 15 MIKE BAGGETT, TEXAS PRACTICE: TEXAS FORECLOSURE: LAW AND PRACTICE § 2.02 (2d ed. 2001). The Property Code defines a "mortgagee" as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system;[20] or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4).

This Court has also held that "inherent in the procedural steps outlined in the Texas Property Code is the assumption that whatever entity qualifies as a 'mortgagee' either owns the note or is serving as an agent for the owner or holder of the note." *Millet v. JP Morgan Chase, N.A.*, No. SA-11-CV-1031-XR, 2012 WL 1029497, at *3 (W.D. Tex. March 26, 2012) (quoting *McCarthy v. Bank of America*, No. 4:11-CV-356-A, 2011 WL 6754064, at *4 (N.D. Tex. Dec. 22, 2011)). Defendant argues that Texas law does not require a party seeking to foreclose to prove that it is the owner or holder of the note, contending that "courts have

---

[20] A book entry system is defined as "a national book entry system for registering a beneficial interest in a security instrument that acts as a nominee for the grantee, beneficiary, owner, or holder of the security instrument and its successors and assigns." TEX. PROP. CODE § 51.0001(1).

dismissed actions based on this 'show me the note' premise."[21] Defendant is correct that the "show me the note" argument fails under Texas law. The "show-me-the-note" theory supposes that "only the holder of the original wet-ink signature note has the lawful power to initiate a non judicial foreclosure." *Puig v. Citibank, N.A.*, 2012 WL 1835721, at *5 (N.D. Tex. May 21, 2012) (quoting *Wells v. BAC Home Loans* Servicing, L.P., 2011 WL 2163987, * 2 (W.D. Tex. April 26, 2011)). The suppositions underlying the "show me the note" theory are an inaccurate description of Texas law for several reasons. First, a party seeking to foreclose need not be the "holder" of the note; a party may be entitled to foreclose if the party establishes that it is the "owner" of the note. *Martin v. New Century Mortg. Co.*, 377 S.W.3d 79, 84 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Leavings v. Mills*, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also O.J. & C. Co. v. Johnson*, No. 01-96-00161-CV, 1997 WL 167866, at *4 (Tex. App.—Houston [1st Dist.] Apr. 10, 1997, no pet.) (not designated for publication) ("The owner of an obligation, of course, may seek to foreclose on collateral."). Nor is production of the original note necessary to foreclose pursuant to a deed of trust. *Kyle v. Countrywide Home Loans, Inc.*, 232 S.W.3d 355, 362 (Tex. App.—Dallas 2007, pet. denied); *Chance v. CitiMortgage, Inc.*, -- S.W.3d ---, 2013 WL 458345, at *2 (Tex. App.—Dallas 2013, no pet.); *Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. March 28, 2011) (per curiam). However, simply because the "show-me-the-note" theory fails under Texas law does not mean that a mortgagee's relationship to the note is completely irrelevant. The sole purpose of the deed of trust is to secure payment to the note; if the holder of the deed of trust does not also own or hold the note, or is not acting on behalf of the holder or owner of the note, there is no assurance that the

---

[21] Mot. Dismiss 5.

proceeds of a deed of trust foreclosure will be applied as payment on the note. *See McCarthy*, 2011 WL 6754064, at *3; *see also* RESTATEMENT (THIRD) OF PROPERTY: MORTGAGES § 5.4 (1997) ("A mortgage may be enforced only by, or in behalf of, a person who is entitled to enforce the obligation the mortgage secures."); *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident.").

It is true that, under Texas law, the note and the lien constitute separate obligations that may be litigated in separate lawsuits. *Stephens v. LPP Mortgage. Ltd.*, 316 S.W.3d 742, 747 (Tex. App.—Austin 2010, pet. denied); *Carter v. Gray*, 81 S.W.2d 647, 648 (Tex. Comm'n App. 1935) ("It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have a foreclosure of lien are severable."). Texas courts have held that this distinction may mean that a party's election to collect a personal judgment on the note does not necessarily bar or waive a later attempt to foreclose the lien. *Stephens*, 316 S.W.3d at 748 ("We conclude that until the underlying debt is actually satisfied, the recovery of a judgment on the note secured by a deed of trust lien, where foreclosure of the lien has not been sought in that suit, does not merge the deed of trust in the judgment and does not preclude foreclosure on the lien in a subsequent suit instituted for that purpose. The district court did not err in concluding that [the lienholder]'s right to foreclose was not barred by res judicata."); *Carter*, 81 S.W.2d at 684 ("[A] plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without a waiver of the lien."). However, this distinction does not imply that a party can foreclose pursuant to a deed of trust that secures payment only to the lender if the party seeking to foreclose is not also the holder or owner of the note or acting on behalf of the holder or owner of the note. Indeed, when

considering whether a party has a right to foreclose on property pursuant to a deed of trust, Texas appellate courts take into account whether the party seeking to foreclose is the holder or owner of the note. *Martin*, 377 S.W.3d at 83-85 ("We hold that the evidence establishes that Wells Fargo owns the deed of trust and promissory note, as New Century's assignee, and thus had standing to foreclose on the note's collateral."); *Wells Fargo Bank, N.A., v. Ballestas*, 355 S.W.3d 187 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (where a bank was barred from re-litigating the issue of ownership on a note, the court of appeals affirmed the trial court's judgment that  the bank "lacks standing [to foreclose] because it does not own a note secured by [the mortgagor's] homestead" (first alteration in original)).

Thus, in order to determine whether Defendant has authority to foreclose in this case, the Court will consider 1) whether Defendant is a mortgage servicer authorized to administer foreclosure on behalf of Deutsche Bank, 2) whether Deutsche Bank is a "mortgagee" under the Texas Property Code, and 3) whether Deutsche Bank is the owner or holder of the note or authorized to act on behalf of the owner or holder of the note.

### i. Is Defendant a Mortgage Servicer Authorized to Administer Foreclosure on Behalf of Deutsche Bank?

A mortgage servicer is defined as "the last person to whom a mortgagor has been instructed by the current mortgagee to send payments for the debt secured by a security instrument." TEX. PROP. CODE § 51.0001(3). Pursuant to the Property Code, a mortgage servicer may administer the foreclosure of property on behalf of a mortgagee if the mortgage servicer and the mortgagee have entered into an agreement and certain disclosure requirements have been satisfied. TEX. PROP. CODE § 51.0025.

Plaintiff's factual allegations indicate that Defendant is the last entity to which Plaintiff has been instructed to send payments and Plaintiff also concedes that Defendant is the servicer.[22] Plaintiff does not argue that Defendant has failed to satisfy the requirements of section 51.0025.[23] Thus, there is no dispute that Defendant is a mortgage servicer authorized to administer foreclosure on behalf of Deutsche Bank.

Defendant argues that Plaintiff has failed to state a claim against it because "[t]he only requirement imposed by the Property Code on the [mortgage] servicer is one of disclosure, which Defendant met."[24] However, as the mortgage servicer, Defendant derives its authority to foreclose from the mortgagee, Deutsche Bank. If Deutsche Bank cannot properly foreclosure pursuant to the deed of trust, then Defendant's attempt to foreclose on the property may still constitute a cloud on Plaintiff's title. Accordingly, the Court must examine whether Deutsche Bank has standing to foreclose.

### ii. Is Deutsche Bank a Mortgagee Under the Property Code?

The deed of trust at issue in this case defines the lender as "Long Beach Mortgage Company, a Corporation."[25] The deed of trust secures repayment of the debt to the lender and allows the lender to accelerate and foreclose upon default.[26]

---

[22] *See* Am. Compl. ¶ 4 ("Shortly thereafter, Defendant informed Plaintiff that she was now to make payments to them [sic]."); Prop. Second Am. Compl. ¶ 6 ("Chase appears to be the servicer.").

[23] At one point in her proposed second amended complaint, under the heading "Causation; damages," Plaintiff does mention that "[p]ursuant to Federal Rules of Civil Procedure 65(a)(1)&(d), the Plaintiffs [sic] allege that they have not received proper notice of foreclosure and that the Defendant does not have standing to foreclose." *See* Prop. Second Am. Compl. ¶ 25. However, Plaintiff provides no further elaboration, and this statement is not offered in the context of a discussion regarding mortgage servicer authority or the requirements of section 51.0025. From Plaintiff's vague statement, the Court cannot conclude that Plaintiff is challenging Defendant's compliance with the disclosure requirements of section 51.0025.

[24] Mot. Dismiss 7.

[25] *See* Doc. 33-1. Unlike many deeds of trust, this deed of trust has no provision regarding MERS.

[26] *See* Doc. 33-1.

The assignment at issue in this case is titled "Assignment of Note and Deed of Trust."[27] The assignment states that the holder of the note and deed of trust is "WASHINGTON MUTUAL BANK, AS SUCCESSOR-IN-INTEREST TO LONG BEACH MORTGAGE COMPANY BY OPERATION OF LAW" and that the assignee is "DEUTSCHE BANK NATIONAL TRUST COMPANY FORMERLY KNOWN AS BANKERS TRUST COMPANY OF CALIFORNIA, N.A., AS TRUSTEE FOR ASSET BACKED SECURITIES CORPORATION LONG BEACH HOME EQUITY LOAN TRUST 2000-LBl." The assignment states: "For value received, Holder of the Note and Deed of Trust transfers them to Assignee and warrants that the lien is valid against the property." The assignment was executed on behalf of Washington Mutual by "Jodi Sobotta Attorney In Fact"[28] and the document is also notarized.

The assignment of the deed of trust in this case demonstrates that Deutsche Bank is the current mortgagee under the Texas Property Code. There are no gaps in the chain of title between the original lender and Deutsche Bank. The assignment purports to convey the deed of trust directly from the original lender—Washington Mutual, as Successor-in-Interest to Long Beach Mortgage Company[29]—to Deutsche Bank. Plaintiff does not allege that Deutsche Bank subsequently assigned the deed of trust. Thus, if valid, the assignment shows that

---

[27] *See* Doc. 33-2.

[28] It is unclear whether the spelling of the signatory's name is "Jodi Sobotta" or "Jodi Sabotta." The handwriting on the assignment document is somewhat ambiguous and Plaintiff uses both spellings throughout her pleadings. For consistency, the Court will use the spelling "Jodi Sobotta" unless quoting Plaintiff's language.

[29] Plaintiff argues that because Long Beach Mortgage Company was shut down in 2007 by Washington Mutual that "in June 2008 there were not successors in interest to Long Beach." Am. Compl. ¶ 5. This argument is nonsensical. The fact that Long Beach Mortgage Company was dissolved does not mean that it cannot have successors in interest. A successor in interest is "[o]ne who follows another in ownership or control of property." BLACK'S LAW DICTIONARY (9th ed. 2009). Both the factual allegations in the pleadings and the assignment document show that Long Beach Mortgage Company was succeeded by Washington Mutual, and nothing in the pleadings suggests that Washington Mutual, as Long Beach Mortgage Company's successor in interest, did not assume Long Beach Mortgage Company's interests in Plaintiff's mortgage loan.

Deutsche Bank is a mortgagee under the Property Code because Deutsche Bank is the "last person to whom the security interest has been assigned of record." *See* TEX. PROP. CODE § 51.0001(4)(C).

### iii. Is Deutsche Bank the Holder or Owner of the Note, or Acting on Behalf of the Holder or Owner of the Note?

Under Texas law, a holder is "the person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." TEX. BUS. & COM. CODE § 1.201(b)(21)(A). "A person can become the holder of an instrument when the instrument is issued to that person, or he can become a holder by negotiation." *Martin*, 377 S.W.3d at 84 (citing TEX. BUS. & COM. CODE § 3.201 cmt. 1). When the instrument is payable to an identified entity, "negotiation requires transfer of possession of the instrument and its indorsement by the holder." *Id.* (quoting TEX. BUS. & COM. CODE § 3.201(b)).

However, "even if a person is not the holder of a note, he may still be able to prove that he is the owner and entitled to enforce the note, foreclose on collateral and obtain a deficiency judgment under common-law principles of assignment." *Leavings*, 175 S.W.3d at 309. An assignment of the deed of trust and the promissory note can establish that the assignee owns the note and has standing to foreclose. *Martin*, 377 S.W.3d at 85 (holding that an assignment that conveyed all beneficial interest under the deed of trust "together with the promissory note" established that the assignee owned the deed of the trust and promissory note and thus had standing to foreclose); *O.J. & C. Co.*, 1997 WL 167866, at *4 (finding that an assignment

15

of the deed of trust that included "all the underlying debts and obligations secured by it" demonstrated that the assignee owned the underlying debt secured by the deed of trust).

Here, the assignment at issue explicitly transfers both the note and the deed of trust. The assignment document shows that ownership of the note was assigned from the original lender—Washington Mutual, as Successor-In-Interest to Long Beach Mortgage Company—to Deutsche Bank. There are no gaps in the chain of title and Plaintiff has not alleged any subsequent transfers of ownership. Thus, the assignment demonstrates that Deutsche Bank is the owner of the note. As owner, Deutsche Bank may foreclose pursuant to the deed of trust.[30]

As a result of the foregoing analysis, the Court has found that, from the faces of the documents central to Plaintiff's claims, Deutsche Bank may foreclose pursuant to the deed of trust and that Defendant, as mortgage servicer for Deutsche Bank, may administer the deed of trust foreclosure.

**3. Does Defendant Lack Authority to Foreclose for Reasons Not Apparent from the Faces of the Documents Central to Plaintiff's Claims?**

Plaintiff argues that the assignment of the note and deed of trust from Washington Mutual to Deutsche Bank was invalid because the assignment document is fake and because the assignment did not comply with a pooling and servicing agreement. Defendant argues that Plaintiff's challenges to the assignment fail a as a matter of law because Plaintiff does not have standing to challenge the assignment or compliance with the pooling and servicing agreement.

---

[30] In her proposed second amended complaint, Plaintiff argues that "Defendant cannot currently prove a valid endorsement of the note to them [sic]." Prop. Second Am. Compl. ¶ 8. However, as described above, an indorsement is not required to establish ownership.

### a. Standing to Challenge the Assignment

Defendant argues that Plaintiff does not have standing to challenge the assignment of the note and deed of trust because Plaintiff is not a party to the assignment.[31] Defendant cites numerous federal district court cases for support of its argument but does not provide any authority from a Texas state court case or statute. Contrary to Defendant's argument, this Court has recognized that Texas law permits a debtor to assert against an assignee any ground that renders the assignment void or invalid. *Routh v. Bank of America, N.A.*, No. SA-12-CV-244-XR, 2013 WL 427393, at *8 (W.D. Tex. Feb. 4, 2013); *see also Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.). A debtor has standing to challenge an assignment on grounds that render the assignment void because a void assignment would not pass title, and the debtor has an interest "to insure himself that he will not have to pay the same claim twice." *Glass*, 330 S.W.2d at 537. Thus, Plaintiff has standing to challenge the assignment of her note and deed of trust on grounds that render the assignment void.

### b. Plaintiff's Allegation that the Assignment Document is "Fake"

Plaintiff contends that "Mrs. Sobotta is in fact not an employee of Washington Mutual or Chase, she is an employee of Lender Process Services, who was hired to manufacture this fake and fraudulent document along with thousands of others like it."[32] Plaintiff alleges that the document "is in fact a fake, fraudulent and void document of no effect."[33]

The Court finds that Plaintiff has alleged specific facts regarding the allegedly fake document. Specifically, Plaintiff has alleged that Mrs. Sobotta was not an employee of

---

[31] Mot. Dismiss 7-8.
[32] Am. Compl. ¶ 5.
[33] Am. Compl. ¶ 5.

17

Washington Mutual or Defendant, that she was hired to manufacture a fake document, and that she was an employee of Lender Process Services. If true, these allegations suggest that the assignment document may have been forged and that the assignment may have therefore been void.[34] *See Lighthouse Church of Cloverleaf v. Tex. Bank*, 889 S.W.2d 595, 601 (Tex. App.— Houston [14th Dist.] 1994, writ denied) (holding that forged deeds are void and cannot pass title); BLACK'S LAW DICTIONARY (9th ed. 2009) (defining "forgery" as "[t]he act of fraudulently making a false document or altering a real one to be used as if genuine."). However, even if the assignment document was forged, based on the pleadings in this case the Court cannot draw the reasonable inference that Defendant's attempt to foreclose would constitute a cloud on Plaintiff's title to the property.

Plaintiff alleges, and the documents central to her claim corroborate, that the original lender was Long Beach Mortgage Company and that the successor in interest to Long Beach Mortgage Company was Washington Mutual. Plaintiff also alleges that "in September of 2008, Washington Mutual filed bankruptcy and later than [sic] month was bought by Defendant."[35] If the assignment document was forged and void, as Plaintiff alleges, Washington Mutual would have retained its interests in Plaintiff's note and deed of trust and, upon Defendant's acquisition of Washington Mutual, Defendant would have assumed all of Washington Mutual's interests in them.[36] Defendant would have therefore become the owner of Plaintiff's note and deed of trust itself and would be entitled to foreclose on the property as

---

[34] The Court recognizes that proof that the assignment document is forged seems unlikely. Plaintiff does not suggest that another party claims to own the mortgage and does not point to any indication from the face of the document suggesting that it may be fake. However, when considering a motion to dismiss, the Court must accept the pleaded facts as true, regardless of whether proof of the alleged facts is "improbable."

[35] Am. Compl. ¶ 5. Plaintiff repeats this same sentence in her proposed second amended complaint, but the typographical error has been corrected. Prop. Second Am. Compl. ¶ 5.

[36] Plaintiff has not alleged that Washington Mutual attempted to assign its interests in Plaintiff's note and deed of trust to another entity before it was acquired by Defendant.

a mortgagee rather than as a mortgage servicer acting on behalf of Deutsche Bank. Thus, because there would be a complete chain of ownership of the note and deed of trust from the original lender to Defendant if the assignment were void, the pleadings suggest that Defendant would be authorized to foreclose on Plaintiff's property even if the assignment document was forged. Accordingly, Plaintiff's allegation that the assignment document was forged does not allow the Court to draw the reasonable inference that Defendant's attempt to foreclose constitutes a cloud on Plaintiff's title to the property.

### c. Plaintiff's Allegation that the Assignment Failed to Comply with the Pooling and Servicing Agreement

In her amended complaint, Plaintiff alleges the following:

The note became part of the Long Beach Home Equity Loan Trust 2000-LB1. The document is controlled by a pooling and servicing agreement which would forbid transfer of the note after 180 days of approximately August or September of 2000. The above described assignment would also be invalid because it does not comply with the PSA. Further, Defendant may not been [sic] the trustee of the trust with the right to foreclose in [sic] the note in compliance with the PSA and the Deed of Trust and note the subject of this suit.[37]

Unlike Plaintiff's allegations regarding the forged deed, Plaintiff has not alleged facts suggesting that a violation of the pooling and servicing agreement would render the assignment void. Plaintiff's statement that the pooling and servicing agreement "would forbid" a transfer after a certain date does not allow the Court to find that the transfer in this case was actually forbidden. Rather, the term "would" suggests that a transfer may only have been forbidden if additional contingencies were satisfied. Furthermore, even if the alleged transfer in this case were "forbidden," Plaintiff has not alleged sufficient facts for the Court to

---

[37] Am. Compl. ¶ 6.

19

find that a forbidden transfer would be void. Plaintiff's statement that the assignment would be "invalid because it does not comply with the PSA" is conclusory. Plaintiff does not allege facts indicating why or how a violation of the pooling and servicing agreement would render the assignment void or even voidable.[38]

To the extent that Plaintiff is alleging that "Defendant may not been [sic] the trustee of the trust with the right to foreclose," the Court finds that Plaintiff's allegation fails to state a plausible claim to relief for at least two reasons. First, Defendant does not need to be the trustee in order to foreclose; the pleadings establish that Defendant is simply acting as the mortgage servicer on behalf of the trustee, Deutsche Bank. Second, even if Plaintiff's pleading statement could be construed as referring to Deutsche Bank rather than to Defendant, Plaintiff's statement fails to state a claim because her statement is purely speculative. She does not allege that Deutsche Bank was not acting as trustee or that Deutsche Bank was likely not acting as trustee; she merely states that it "may" not have been the trustee. In her proposed second amended complaint, Plaintiff also adds the following statement: "The question arises did the note make it into the trust thereby making Deutsche the holder."[39] Not only is this statement purely speculative, but it is also directly contradicted by Plaintiff's statement that the "note became part of the Long Beach Home Equity Loan Trust 2000-LB1."[40] Accordingly, the Court finds that Plaintiff's allegations regarding lack of compliance with the pooling and servicing agreement are insufficient to support a plausible claim to relief.

---

[38] If anything, it seems as though a transfer in violation of the pooling and servicing agreement would be voidable rather than void. A void contract never comes into being. *See* RESTATEMENT (SECOND) OF CONTRACTS § 7 ("A promise for breach of which the law neither gives a remedy nor otherwise recognizes a duty of performance by the promisor is often called a void contract. . . . [S]uch a promise is not a contract at all."). Plaintiff gives the Court no reason to find that an assignment in violation of the pooling and servicing agreement would not have been a contract at all.

[39] Prop. Second Am. Compl. ¶ 6.

[40] Prop. Second Am. Compl. ¶ 6

As a result of the foregoing analysis, the Court finds that Plaintiff's cause of action to quiet title fails to state a claim upon which relief can be granted. Defendant's motion to dismiss Plaintiff's claim to quiet title is therefore granted.

## B. Cause of Action for Violation of the UCC

In her amended complaint, Plaintiff alleges that Defendant "cannot prove the . . . elements of holder status" and cites sections 3.301, 3.309, and 3.418(d) of the Texas Business and Commerce Code in support of her claim.[41] Plaintiff also alleges that "[p]ursuant to §3.203 of the Texas Business and Commerce Code, Defendant Bank has no right to enforce the instrument due to the fraud and illegal acts of transferring the note and deed of trust."[42] Finally, Plaintiff alleges that pursuant to sections 3.301 and 3.309, Defendant "is not the holder or owner of the note and deed of trust and cannot establish the chain such that Defendant can prove that Defendant bank has the right to foreclose."[43]

Rather than constituting an independent cause of action, the Court finds that Plaintiff's references to the UCC are merely offered in connection with Plaintiff's claim to quiet title and her argument that Defendant must demonstrate that it has authority from the owner or holder of the note prior to administering foreclosure. The Court has disposed of Plaintiff's argument above. Defendant's motion to dismiss Plaintiff's alleged cause of action under the UCC is therefore granted.

---

[41] *See* Am. Compl. ¶ 17. Texas has adopted the Uniform Commercial Code and codified it at Title 1 of the Texas Business and Commerce Code. Section 3.301 of the Business and Commerce Code governs what individuals are entitled to enforce an instrument, section 3.309 governs when a person not in possession of an instrument may be entitled to enforce the instrument, and section 3.418(d) concerns payment or acceptance of an instrument by mistake.

[42] Am. Compl. ¶ 18. Section 3.203 of the Business and Commerce Code governs the transfer of instruments and the rights acquired by transfer.

[43] Am. Compl. ¶ 19.

**C. Causes of Action for Violation of the Texas Debt Collection Act, Violation of the Texas Deceptive Trade Practices Act, and Common Law Fraud**

Plaintiff has indicated that she no longer wishes to pursue her claims under the Texas Debt Collection Act, under the Texas Deceptive Trade Practices Act, and for common law fraud.[44] Defendant's motion to dismiss these claims is therefore granted.

## IV.

**A. Legal Standard for Deciding Whether to Grant Leave to Amend**

"Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." *Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227, 230 (1962)). A court may deny a motion for leave to amend if there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed [or] undue prejudice to the opposing party by virtue of allowance of the amendment." *Id.* (quoting *Foman*, 83 S. Ct. at 230). A court may also deny a motion for leave to amend when amendment would be futile. *Id.* at 387.

However, while a court applies the lenient standard of Rule 15(a) to motions for leave to amend that are filed within the applicable scheduling order deadline, "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired." *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003). When a motion for leave to amend is filed after the applicable deadline, "[o]nly upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *Id.*

---

[44] *See* Mot. Leave ¶ 2; Resp. to Mot. Dismiss ¶ 24.

**B. Whether the Court Should Grant Plaintiff Leave to File Her Proposed Second Amended Complaint**

Plaintiff did not file her motion for leave to amend within the applicable scheduling order deadline. Plaintiff moved for leave to file her second amended complaint on January 23, 2013. The deadline for Plaintiff to file a motion seeking leave to amend pleadings was September 27, 2012.[45] Although Plaintiff contends that the "[d]eadline for seeking leave to amend pleadings was set for January 31, 2013,"[46] her statement is incorrect. On December 12, 2012, the Court granted the parties' joint motion to modify the scheduling order and extended the deadline for *Defendant* to file a motion for leave to amend pleadings to January 31, 2013.[47]  The amended scheduling order did not extend the deadline for Plaintiff to file a motion for leave to amend. Because Plaintiff's request for leave to amend was filed after the applicable scheduling order deadline expired, Plaintiff must show good cause to modify the scheduling order.

Plaintiff moved for leave to file her second amended complaint almost a year and a half after the case was removed to this Court, almost a year after the Court granted Plaintiff leave to file her first amended complaint, and almost four months after the applicable scheduling order deadline passed. Plaintiff has not provided any justification, or even an explanation, for the delay. She has not provided any newly discovered facts in her proposed second amended complaint and there appears to be no reason why she could not have timely

---

[45] *See* Scheduling and Docket Control Order, Doc. No. 28 at 2.
[46] Mot. Leave ¶ 1.
[47] *See* Order Granting Joint Motion to Lift Stay of Discovery and Modify Scheduling and Docket Control Order, Doc. No. 31 (stating that the "[d]eadline for Defendant to file a motion . . .  (2) seeking leave to amend pleadings; or (3) to join parties" was January 31, 2013).

filed her motion for leave to amend.[48] Permitting Plaintiff to add the additional claims at this point would prejudice Defendant by further delaying final disposition of the case. Thus, the Court finds that Plaintiff has not shown good cause to modify the scheduling order. Her motion for leave to file a second amended complaint must therefore be denied.

Additionally, even if Plaintiff had shown good cause, the Court finds that leave to amend must be denied in this case because amendment would be futile. All of the causes of action in Plaintiff's proposed second amended complaint fail to state a claim upon which relief can be granted, as the Court will explain.

**1. Plaintiff's Proposed Amended Causes of Action to Quiet Title and for Violation of the UCC Fail to State a Claim**

As described above, the Court has already considered Plaintiff's claim to quiet title and her argument regarding violation of the UCC in light of the factual allegations contained in both her amended complaint and her proposed second amended complaint.  Because the Court has found that Plaintiff's allegations fail to state a claim sufficient to survive a motion to dismiss, permitting the proposed amendment of these claims would be futile.

**2. Proposed Cause of Action Under the Civil Practice and Remedies Code Fails to State a Claim**

In her proposed second amended complaint, Plaintiff alleges a violation of "Chapter 12" of the Civil Practice and Remedies Code. In connection with her claim, Plaintiff asserts:

> Defendant through its agent Jodi Sabotta caused to be filed in the Bexar County Deed records a document called "assignment of not [sic] and deed of trust." The document asserted that the Defendant has an interest in the lien interest

---

[48] There particularly appears to be no reason why Plaintiff could not have timely requested leave to amend to add her proposed causes of action under the Civil Practice and Remedies Code and for breach of contract. Plaintiff had asserted these causes of action in her original state court petition but subsequently abandoned them in her amended complaint.

originally placed against the Plaintiff's property via the original deed of trust. Mrs. Sobota is signing the document on behalf of MERS to transfer to the [sic] Deutsche. Such acts committed by Defendant and their [sic] agent Mrs. Sobota on or about June 25, 2008 (some eight years after the origination of this loan), constitutes [sic] a violation of Chapter 12, as the document is fraudulent because Mrs. Sobota signed in a capacity which she did not hold or have authority to sign under and the document was filed for the express purpose of closing an [sic] link in the chain of title so that Defendants could proceed to foreclose. Further, the document may itself be fake, fraudulent and void because the signature on the document may not actually be the signature of Mrs. Sobota and further she is an agent of Lender Process Services. The Defendants therefore violated Chapter 12 of the Texas Civil Practices and Remedies Code as follows:

 (a) Recorded a document with knowledge that the document was a fraudulent lien or claim against real property.

(b) With the intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01 Penal code, evidencing a valid lien or claim against real property or an interest in real property.

(c) [W]ith the intent to cause Plaintiff to suffer

(1) Financial Injury

(2) Mental Anguish or Emotional Distress[.][49]

In order to establish liability under Chapter 12 of the Civil Practice and Remedies Code, a plaintiff must establish that the defendant: (1) made, presented, or used a document with knowledge that it was a fraudulent claim against real property; (2) intended the document be given legal effect; and (3) intended to cause the plaintiff financial injury. TEX. CIV. PRAC. & REM. CODE § 12.002(a); *Bernard v. Bank of Am., N.A.*, No. 04-12-00088-CV, 2013 WL 441749, at *4 (Tex. App.—San Antonio Feb. 6, 2013, no pet. h.) (mem. op.); *Gray v. Entis Mech. Servs., L.L.C.*, 343 S.W.3d 527, 530 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

In her proposed second amended complaint, it is unclear who Plaintiff is alleging "caused" the document to be filed. Plaintiff does not specify whether Mrs. Sobotta was an agent of Defendant JPMC, of proposed defendant Deutsche Bank, of both, or of neither.

---

[49] Prop. Second Am. Compl. ¶ 20.

Plaintiff uses the terms "Defendant" and "Defendants" seemingly indiscriminately and, when referencing "Defendant" in the singular form, Plaintiff does not specify the party to which she is referring. At one point Plaintiff also states that Mrs. Sobota "is signing the document on behalf of MERS," which would suggest that Mrs. Sobota was not an agent of either JPMC or Deutsche Bank and that neither JPMC nor Deutsche Bank may have known of the fraud. To the extent that Plaintiff parrots back the language of section 12.002(a), her statements are merely legal conclusions, not allegations of fact, and are therefore insufficient to predicate a finding that Plaintiff has pleaded a plausible claim to relief under the Civil Practice and Remedies Code. The Court therefore finds that it would be futile to allow Plaintiff to add her claim under the Civil Practice and Remedies Code.

### 3. Proposed Cause of Action for Breach of Contract Fails to State a Claim

In her proposed second amended complaint, Plaintiff pleads an "alternative" cause of action for breach of contract. Plaintiff alleges:

> This cause of action is pled in the alternative and is only upon proof that the Defendant is the holder. Plaintiff would assert that under the note that upon payment of the note [sic] that the Plaintiff is entitled to proper credit for all payments received via insurance or credit default swaps. Plaintiffs [sic] would assert that Defendant has been paid in [sic] by multiple insurance policies and credit default swaps, such that, in the event that Defendant is the holder that Defendant is not entitled to foreclose but Plaintiff is entitled to credit for all payments received against the debt due on the note. Plaintiff asserts that they [sic] are entitled to specific performance. . . . Plaintiffs [sic] asserts that Defendant has been paid in part via multiple insurance policies and credit default swaps.[50]

"The elements in a claim for breach of contract are: (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Richter v. Wagner Oil Co.*, 90 S.W.3d

---

[50] Prop. Second Am. Compl. ¶ 22.

890, 898 (Tex. App.—San Antonio 2002, no pet.). "A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 769–70 (Tex. App.—Dallas 2005, pet. denied).

Again, Plaintiff's allegations fail to specify whether she is referring to Defendant JPMC or to proposed defendant Deutsche Bank. Regardless, Plaintiff's breach of contract claim fails to state a plausible claim for relief against either entity. Plaintiff has not alleged that she fulfilled her obligations under the contract; she merely alleges that "Defendant has been paid in part." Nor does Plaintiff allege that payments from insurance policies or "credit default swaps," even if paid on her behalf, would have been sufficient to constitute her performance of the contract. Accordingly, the Court finds that it would be futile to allow Plaintiff to add her claim for breach of contract.

### V.

### <u>Conclusion</u>

In light of the foregoing analysis, the Court finds that Plaintiff's amended complaint fails to state a claim to relief that is plausible on its face. Accordingly, Defendant's motion to dismiss the amended complaint (Doc. No. 19) is GRANTED. Plaintiff's claims are therefore DISMISSED.

The Court finds that Plaintiff's motion for leave to amend has been filed after the applicable scheduling order deadline and that Plaintiff has not shown good cause to modify the scheduling order. The Court also finds that permitting the proposed amendment would be

futile. Accordingly, Plaintiff's motion for leave to file a second amended complaint (Doc. No. 34) is DENIED.

The Clerk is directed to enter judgment that Plaintiff take nothing on her claims. Defendant is awarded its costs of court and must file a Bill of Costs in the form required by the Clerk of Court within fourteen days of the judgment.

It is so ORDERED.

SIGNED this 20th day of February, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

28